## ADONIJAH BROOKS *vs.* ZURIEL TYLER.

If the plaintiff in a declaration in ejectment describe the land sued for by courses and distances, without naming any monument except the point began at, and without reference to any survey, or to the lines of the lot, he can only recover according to the direction of the magnetic needle at the time when the action was brought.

This was an action of *ejectment* to recover the possession of a piece of land in *Essex,* which is part of lot no. 100, and was particularly described in the declaration by courses and distances, without naming any monument except at the starting point. The east line, the only one of the tract concerning which any question could arise, was described as being a line beginning at a given corner, and running *north thirty six degrees east.*

On the trial of the cause in the county court, the plaintiff offered to show, that in the allotment of the town of *Essex,* the tract

in question was numbered *one hundred*; that in the survey of said town, the east line of lot no. 100 was described as being a line beginning at a maple then known as a corner, and running thence south thirty six degrees west, to the place at which the description commenced in the declaration; that the parties had always considered the true line of their possessions to be a straight line from the point first mentioned to the said maple tree, and had agreed to make their fences on said line; and that owing to the variation of the magnetic needle, the compass did not now point to the said maple tree, but verged to the west: but the plaintiff contended that the line given in the declaration, corresponding in its direction with the line in the survey of said lot, which terminated at known corners, and had been assented to by the parties, he had a right to recover according to said ancient survey. But the court decided that the plaintiff,having declared without any reference to any survey, or to the lines of the lot, could only recover according to the present direction of the needle, or its direction when said action was brought; and the plaintiff agreeing that the defendant was not in possession of any land west of the present direction of the needle, the court rejected said testimony; and no other testimony being offered, directed a verdict for the defendant: to which opinion of the court the plaintiff excepted and removed the cause to the Supreme Court on a motion for a new trial.

*C. Adams, for the plaintiff.*—The question is whether the line in the declaration is to be run according to the present direction of the compass, or according to the direction when the lot was surveyed, and as the lot *was actually surveyed*. It is not always the case that lots and small tracts of land can be described by natural monuments. If artificial ones are erected, they may be soon prostrated, or decay by time; and we are, therefore, obliged to rely for the direction of boundary lines upon the compass, as the best means in our power. But a given line fifty years ago is not the true line now. A variation of from three to fifteen degrees has taken place within the last half century. 1 *Williams' History, p.* 473 What then is to be done? There may be no natural boundaries, one corner only remains, and the ancient survey shows the direction from that corner. It cannot be doubted that the parties are to hold according to this ancient survey; but the question returns, how is the line to be described in the declaration? If we declare for a piece of land giving the present direction of the compass, then our proof will not support the declaration: there will be a variance between the declaration and the proof offered. The simple way seems to be to declare for the land just as it was surveyed,

CHITTENDEN,
January,
1829.

Brooks
vs.
Tyler.

CHITTENDEN,
January,
1829.

Brooks
vs.
Tyler.

and then, after ascertaining what the variation is, to run the line with reference to the variation. Practical surveyors have no difficulty in calculating this variation. In this way courts of justice can at all times give to parties the identical land which was originally surveyed out to them. This is the most feasible mode, and we do not perceive that it is open to any objection.

We are aware that parties may declare for their lands by the number of the lot. But unless the lines have been marked and known, the same difficulty will arise here. The lines must be ascertained by the compass, and no one will pretend that the present direction is to be taken, but such a one as will give the ancient line. But parties are not obliged to declare for their lands by the number. This may not always be practicable. It may often happen that no other description can be given than that of the ancient survey ; and unless the mode we have attempted to pursue can be sustained, parties may be compelled to lose their lands.

*Allen, for defendant.*—It will be noticed that the place of beginning being stated, the declaration says, thence N. 36 deg. E. 17 65, to a stake at the side of the road, but that there is no evidence in the case shewing the existence of any such stake. The maple alluded to is said to be 40 or 50 rods north of the highway in which the stake is supposed to be stuck. The description of the line then is, from the south east corner S. 36 deg. E. without any allusion to any allotment line or corner, and the case admits that the defendant lays no claim, and has no possession, to any lands west of this line. If the declaration had said N. 36 degrees E. as the compass would vary it in 1763 ; or upon the lot line ; or to the north east corner of the lot ; or diverging at the north side of the lot 15 or 18 inches from the ancient established divisional fence, the case might have been otherwise. But the writ bears date in 1826 : the description therefore is, *now*, N. 36 deg. E. which the case admits runs to the west of any possession of the defendant.

PRENTISS, J. pronounced the opinion of the Court.—The declaration, after giving the *terminus a quo*, describes the land by courses and distances only, without any reference to the lines of the lot of which the land is alleged to be a part, or to any certain or natural monuments ; and whether or not the defendant was in possession of any part of the land described, could be determined only by actual survey. When there is nothing stated to controul the courses and distances, the lines must be run by the needle.—(*McIver* vs. *Walker*, 9 *Cranch*, 173.)—It is true, that

the magnetic course is subject to variation and uncertainty; and in weighing evidence of recent surveys of ancient lines, regard may be had to the variation of the needle. But the declaration in this case contains no reference to the lines of the lot, or to any ancient survey; and we cannot understand the courses stated in the declaration, to mean courses as designated by the needle forty or fifty years ago, instead of courses designated by it now. If the defendant was in possession of land, belonging to the plaintiff as a part of lot no. 100, the plaintiff might have given a description, either by the lines of the lot, by metes and bounds, or by such courses and distances, as would, according to the course of the needle, have included the land of which the defendant was in possession. But as it was admitted on the trial, that the courses and distances stated in the declaration, if run according to the present direction of the needle, would not include any land of which the defendant was in possession, and there being no other description given, we are of opinion that the judgment of the court below was right and must be affirmed.